Freedom Mtge. Corp. v Engel (2024 NY Slip Op 24226)

[*1]

Freedom Mtge. Corp. v Engel

2024 NY Slip Op 24226

Decided on August 22, 2024

Supreme Court, Orange County

Sciortino, J.

Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.

This opinion is uncorrected and subject to revision before publication in the printed Official Reports.

Decided on August 22, 2024
Supreme Court, Orange County

Freedom Mortgage Corporation, Plaintiff,

against
Herschel Engel, 1 Zlotchev 302 CORP., Board of Managers of the Forest Way Condominium, Citibank, N.A., and Moshe Polatchek as "John Doe #1", Toby Polatchek as "John Doe #2", Joel Polatchek as "John Doe #3", Breindy Polatchek as "John Doe #4", Etty Polatchek as "John Doe #5", Lipa Polatchek as "John Doe #6", Frumit Marmorstein as "John Doe #7", Defendants.

Index No. 001139-2015

For Plaintiff:
Reed Smith LLP
James N. Faller, Esq.
Andrew B. Messite, Esq.
599 Lexington Avenue, Floor 22
New York, NY 10022
For Defendant 1 Zlotchev 302 Corp.:
Menashe & Associates, LLP
Yecheskel Menashe, Esq.
400 Rella Boulevard, Suite 190
Montebello, New York 10901

Sandra B. Sciortino, J.

The following papers were read on plaintiff's motion for summary judgment and an order of reference, with related relief (Sequence #9), and defendant 1 Zlotchev 302 Corp. (Zlotchev) cross-motion for summary judgment dismissing the complaint and canceling the subject [*2]mortgage and the recorded notice of pendency (Sequence #10):
PAPERS NYSCEF DOCS.
Motion Sequence #9:
Notice of Motion /Memorandum of Law/Affirmation (Faller)/
Exhibits 1-16/Affidavit of Merits (Bielby)/Exhibits A-M/
Affirmation of Possession (Roth)/Exhibits A-C/Statement of Material Facts 183 - 220
Memorandum of Law in Opposition/Response to Statement of Material Facts 226 - 227
Memorandum in Reply 228
Motion Sequence #10:
Notice of Motion/Memorandum of Law 224 - 225
Memorandum of Law in Opposition 229
Memorandum of Law in Reply 232
Background and Procedural History
This foreclosure matter arises out of a mortgage and note in the original sum of $225,000 entered into between plaintiff's predecessor in interest and former defendant Engel on May 26, 2005. The mortgage encumbered real property located at 1 Zlotchev Way, Unit #302, Monroe, New York (premises). The mortgage was modified by Consolidation, Extension and Modification Agreement dated July 22, 2005. The mortgage was thereafter assigned, first from MERS as nominee to the original lender, Fairmont Funding, and then to plaintiff, on September 11, 2009.
Plaintiff alleges, and Engel never denied, that he defaulted on the note and mortgage by failing to pay the March 1, 2008 installment and all subsequent installments. A foreclosure action was commenced in 2008 under Index Number 7515/2008. That action was discontinued by stipulation of the parties, so-ordered by the Supreme Court (Slobod, J.) on January 8, 2013. 
This foreclosure action was commenced on February 19, 2015. On March 19, 2015, Engel filed an unsigned and unverified answer to the complaint. He then filed a motion to dismiss and plaintiff cross-moved for summary judgment on the complaint. By Decision and Order dated November 12, 2015, the motion to dismiss was denied and plaintiff's summary judgment motion was granted. 
In 2018, the Second Department, reversing both the grant of summary judgment and the denial of the motion to dismiss, found that the six-year statute of limitations had expired. Plaintiff received leave to appeal to the Court of Appeals.
In February 2021, the Court of Appeals, reversing the Second Department, held that plaintiff's voluntary discontinuance affirmatively revoked the acceleration of the debt, making the 2015 action timely. The matter was remitted to the Appellate Division for determination of issues raised on appeal and not determined in the 2018 Appellate decision. 
Just before the decision of the Court of Appeals, Engel transferred the property to defendant Zlotchev, allegedly for consideration of $450,000. The transfer was not disclosed to the Court of Appeals or any other court.
On October 21, 2021, the Appellate Division issued a new decision, again denying both defendant's and plaintiff's 2015 motions, by finding that triable issues of fact remained concerning plaintiff's standing as holder of the note at the date of commencement of the action and plaintiff's compliance with the notice of default provisions of the mortgage. 
The parties returned to this Court. At a conference on March 28, 2022, plaintiff was permitted to file a new motion for summary judgment. After Engel filed opposition, plaintiff discovered the 2021 deed to Zlotchev. In reply papers, in light of the title transfer, plaintiff waived the right to a deficiency judgment against Engel. 
In August 2022, plaintiff filed a motion for leave to serve and file a Supplemental Summons, Amended Complaint, and Amended Notice of Pendency, adding Zlotchev as a party defendant. With a deficiency judgment waived, plaintiff argued that Engel no longer had a defensible interest in the action, and the action against him should be discontinued. 
By Decision and Order dated November 30, 2022, this Court granted plaintiff's motion to amend the pleadings to add Zlotchev. Summary judgment was denied as premature, without prejudice, pending service and joinder of issue of the amended pleadings. The motion to discontinue against Engel was denied.
The amended pleadings were filed on December 8, 2022. Issue was joined by the filing of Engel's amended answer and counterclaim and Zlotchev's answer and counterclaims on January 11, 2023. Plaintiff's replies to both defendants' counterclaims were filed on January 31, 2023. 
In the interim, on December 30, 2022, New York enacted the Foreclosure Abuse Prevention Act (FAPA) (CPLR 203(h); 213(4)). By its terms, FAPA applies to any pending foreclosure filed before December 30, 2022, where a final judgment of foreclosure and sale has not been "enforced," a term not clarified by FAPA nor agreed upon by the courts. 
FAPA includes a provision which precludes a lender or servicer from unilaterally de-accelerating a mortgage and time-bars a lender from foreclosure after six years from the date of the initial acceleration.
In May 2023, plaintiff sought summary judgment on the amended pleadings; striking of the defendants' answers and counterclaims; an order of reference and appointment of a referee; default against non-appearing defendants; and amendment of the caption to rename the Doe defendants. Plaintiff's motion was based on an argument that the provisions of FAPA were unconstitutional as applied. 
In opposition, Engel and Zlotchev argued that plaintiff's action must be dismissed as barred by the statute of limitations pursuant to FAPA; and, if not for the statute of limitations, for plaintiff's failure to make its prima facie case for summary judgment. Zlotchev cross-moved for summary judgment, arguing that, regardless of the operation of FAPA, as it was a stranger to the litigation when the statute of limitations expired, it is entitled to judgment canceling the mortgage of record.
By Decision and Order dated January 10, 2024, the Court granted plaintiff's motion to strike Engel's counterclaim and dismissed him as a party. As plaintiff failed to properly notify the Office of the Attorney General of its constitutional challenge to FAPA, the balance of plaintiff's motion was denied without prejudice. Zlotchev's motion for summary judgment was likewise denied without prejudice.

Plaintiff's Motion for Summary Judgment(Seq. #9)
By motion filed March 4, 2024, plaintiff seeks summary judgment on its affirmative claim, striking Zlotchev's answer with prejudice, and for associated relief. Plaintiff argues:
• Zlotchev is not entitled to quiet title based on the statute of limitations because FAPA is [*3]unconstitutional as applied to this matter;
• The Legislature cannot change the judgment of the Court of Appeals because of the doctrines of due process and separation of powers;
• FAPA cannot be applied retroactively;
• If FAPA is applied retroactively, it violates plaintiff's Due Process rights;
• If FAPA shortens the statute of limitations, it violates an impermissible Taking;
• To the extent FAPA bars enforcement of this mortgage, it is unconstitutional.
In opposition, Zlotchev argues:
• Plaintiff's application fails to meet its prima facie burden as there is no foundation for the business records plaintiff submits;
• Zlotchev acquired title "insulated from the effects of the appellate reversal of the order;"
• The amended complaint was not timely interposed against Zlotchev;
• The statute of limitations, as provided by FAPA, bars this action.
In reply, plaintiff asserts:
• The prima facie burden has been met through admissible evidence;
• Zlotchev was not a good faith purchaser for value;
• The foreclosure claim against Zlotchev relates back to the claim against Engel.

 Defendant's Cross-Motion for Summary Judgment
canceling the mortgage and notice of pendency (Seq. #10)
By motion filed April 21, 2024, Zlotchev seeks dismissal of plaintiff's complaint, summary judgment on its counterclaims and cancellation of the subject mortgage and notice of pendency. Defendant argues:
• The statute of limitations bars the instant action;
• FAPA applies to this action because there has never been a judgment of foreclosure and sale:
• FAPA is applicable retroactively;
• FAPA restores the law that was in effect for 100 years, including the time the discontinuance was issued;
• Plaintiff has not proven FAPA to be unconstitutional beyond a reasonable doubt;
• FAPA does not violate procedural due process:
• Plaintiff lacks a constitutionally-protected property interest;
• The legislative process afforded plaintiff due process;
• FAPA does not violate substantive due process;
• FAPA does not violate the Separation of Powers clause;
• FAPA does not violate the Contracts Clause:
• The mortgage does not contain any agreement to re-set the statute of limitations;
• FAPA does not shorten the statute of limitations;
• Defendants are entitled to cancellation of the mortgage and notice of pendency.
Plaintiff's arguments in opposition largely mirror the arguments in support of its motion:
• Zlotchev's claim must fail because FAPA is unconstitutional as applied:
• The Legislature cannot change the Court of Appeals' judgment without violating Due Process and the doctrine of Separation of Powers;
• FAPA is not retroactive;
• If FAPA shortens plaintiff's limitations period, plaintiff's due process rights are violated;
• If FAPA shortens plaintiff's limitations period, it is an unconstitutional Taking;
• Application of FAPA is unconstitutional to the extent it bars enforcement of the mortgage.
Defendant's Reply argues:
• FAPA's retroactivity has been settled and is a matter of stare decisis;
• Retroactive application does not violate due process;
• Retroactive application is not an unconstitutional Taking;
• FAPA does not violate the Contracts Clause or Separation of Powers;
• Zlotchev cannot be made a party pursuant to "relation-back" theories as the original pleading was not timely filed;
• Zlotchev and Engel were never united in interest;
• Plaintiff was never mistaken as to the identity of Zlotchev;
• Zlotchev did not have actual notice of this action during the limitations period.
Notice of these motions was served by plaintiff upon the Office of the Attorney General. By letter dated January 12, 2024, the Attorney General declined to intervene, noting that it has previously defended the constitutionality of FAPA in various pending appellate matters (NYSCEF 198-199).
The Court granted both parties' applications to expand the word limitations on their submissions. Full advantage was taken by both sides. 
The Court has fully considered those submissions.

 DISCUSSION
For the reasons which follow, the plaintiff's application for summary judgment dismissing Zlotchev's Answer, an Order of Reference, appointment of a referee and related relief is granted. The defendant Zlotchev's application for dismissal of the complaint and discharge of the mortgage is denied. The counterclaim is dismissed.

Applicability of FAPA to the Facts in Engel
The Court will initially examine FAPA's applicability and constitutionality as those determinations could have the effect of mooting the balance of plaintiff's motion.
There is no dispute that the statute of limitations governing mortgage foreclosure actions is six (6) years. (CPLR 213(4); Lubonty v. U.S. Bank, N.A., 34 NY3d 250, 261 [2019]) Where the mortgage debt is payable in installments, a separate cause of action accrues for each unpaid installment, and the limitations period begins to run on the date each installment becomes due; a plaintiff's recovery, however, is limited to those unpaid installments which accrued during the six years prior to the commencement of the action. (Wells Fargo Bank, N.A. v. Cohen, 89 AD3d 753[2d Dept 2011]) Once the debt is accelerated, generally by the commencement of an action, the entire amount becomes due and the statute of limitations begins to run on the entire debt. [*4](US Bank Trust, N.A. v. Reizes, 222 AD3d 907, 909 [2d Dept 2023]) 
The crux of this matter before this Court, and addressed by the Second Department and the Court of Appeals, concerns the 2008 commencement of a foreclosure action under Index Number 7515/2008. After a Judgment of Foreclosure and Sale was granted to plaintiff on September 13, 2010 upon defendant's default, and before the Referee's Sale scheduled for May 15, 2012, defendant filed an Order to Show Cause. The parties, by counsel, entered into a Stipulation (NYSCEF 185) vacating the Judgment of Foreclosure; withdrawing the Order to Show Cause, and discontinuing, without prejudice, the foreclosure action and associated Notice of Pendency. The Stipulation was "so-ordered" by the Court (Slobod, J.) on January 23, 2013. 
In short, an action was commenced, accelerating the mortgage debt; the action was discontinued upon agreement of both parties, thereby canceling the mortgage acceleration, i.e., "deceleration".
The acceleration/decceleration scenario was addressed by the Second Department in Christiana Trust v. Barua, 184 AD3d 140 [2d Dept 2020], lv. den., 35 NY3d 916 [2020], decided a year before the Court of Appeals' Engel decision. In Christiana, a case involving a unilateral deceleration by the lender, the Second Department held that "proper service of a pleading setting forth an election to foreclose the entire mortgage debt will ordinarily be sufficient 'to put the borrower on notice that the option to accelerate the debt has been exercised ... Indeed, the commencement of the action ... has been traditionally considered the decisive act that constitutes an election'" (Id. at160) (citations omitted). However, the Court in Christiana went on to note that "a binding election occurs only where an estoppel (i.e., a material change in the defendant's position) is created. ... Accordingly, even after the holder of a note and mortgage has elected to accelerate the entire mortgage debt, the holder retains the right to 'revoke its election to accelerate ... provided that there is no change in the borrower's position in reliance thereon'" (id. at 161, quoting, Federal National Mortgage Association v. Mebane, 208 AD2d 893, 894 [2d Dept 1994]; U.S. Bank National Association v. Speller, 80 Misc 3d 1233(A) [Putnam Co. 2023]).
This is neither a new nor novel holding. In Kilpatrick v. Germania Life Ins. Co., 183 NY 163, 168 [1905], the Court of Appeals held that "in the face of a discontinuance, the election made in a foreclosure action to treat the mortgage debt as due only becomes 'final and irrevocable after [the mortgagor's] change of position and assumption of legal obligations, the direct result of that election." 
As an example, in Kilpatrick, the plaintiff mortgagor in the action, sued the mortgagee to recover a $1,000 fine levied upon default. After borrowing the funds to pay the debt, the plaintiff learned that the action had been discontinued, clearly unilaterally, several days before. Yet, upon payment, the payment of the $1,000 was still imposed. The mortgagor prevailed upon suit because of his "assumption of legal obligations" (id.).
More recently, in Speller, the Putnam County Supreme Court recognized that a "long line of Second Department caselaw accorded lenders the right to unilaterally revoke an election to accelerate a mortgage debt by 'an affirmative act of revocation occurring during the six-year statute of limitations period subsequent to the initiation of the prior foreclosure action'" (80 Misc 3d at hn 8) (citations omitted).
In 2018, the Second Department held that "[t]he general rule is that plaintiff was under no [*5]restraint in changing her mind [to accelerate a mortgage debt] is likewise clear: only if a mortgagor can show substantial prejudice will a court in the exercise of its equity jurisdiction restrain the mortgagee from revoking its election to accelerate" (Golden v. Ramapo Imp. Corp., 78 AD2d 648, 650 [2d Dept 1980]). 
The lender's right to revoke is grounded in the contractual relationship between lender and borrower, and, more specifically, in an "optional/discretionary acceleration provision of the kind present in the Note and Mortgage [FN1]
" (Milone v. US Bank, N.A., 164 AD3d 146. 156 [2d Dept 2018]).
The same discretionary language is present in the note and mortgage at bar. 
On February 18, 2021, the Court of Appeals reversed the Second Department's July 2018 Engel decision. (37 NY3d 1 [2021]). In so doing, the Court of Appeals "reaffirmed the circumstances under which the acceleration of a mortgage debt is revoked" (See, U.S. Bank Trust National Association v. Joerger, 83 Misc 3d 605 [Suffolk Co. March 8, 2024]) In Engel, the Court of Appeals held that the bilateral voluntary discontinuance of an action constituted a revocation of the debt acceleration asserted with the commencement of the foreclosure action (Id. at hn 2).
Then came FAPA, casting the trial courts and the Appellate Divisions into uncertainty.
"FAPA overrode not just the holding in Freedom Mortgage Corp. v. Engel, but more than a century of caselaw holding that lenders by an affirmative act of revocation may unilaterally revoke their election to accelerate all sums due under an optional acceleration clause in a mortgage provided there is no change in the borrower's position in reliance thereof" (Speller, 80 Misc 3d at hn 12).
 In Joerger, the Suffolk County Supreme Court assailed the Legislature for ignoring, in the enactment of FAPA, "the long line of cases which stood for the judicial standard that historically existed in this area of law — that is, where there is a validly filed stipulation of discontinuance resolving a case, it is as if the case 'had never been begun" (83 Misc 3d 605; quoting, Yonkers Fur Dressing Co., Inc. v. Royal Ins. Co. Ltd., 247 NY 435 [1928]). The Court noted that, as long ago as 1885, the Court of Appeals held, "The foreclosure action was discontinued and all the proceedings thus annulled. There was no longer any record or adjudication in that action which bound anyone. By the discontinuance of the action the further proceedings in the action are arrested not only, but what has been done therein is also annulled, so that the action is as if it never had been" (I 83 Misc 3d 605 at hn 8., quoting, Loeb v. Willis, 100 NY 231, 235 [1885]) (emphasis supplied).
In enacting FAPA, the Legislature ignored this lengthy precedent.
CPLR 203(h) was amended, effective December 30, 2022, to provide:
Once a cause of action upon [a note and mortgage] has accrued, no party may, in form or effect, unilaterally waive, postpone, cancel, toll, revive or reset the accrual thereof, or otherwise purport to effect a unilateral extension of the limitations period prescribed by law to commence an action and to interpose a claim.
The Bill's Sponsor went on to note, as justification for the amendment, that "abuses of [*6]the judicial foreclosure process ... have been sanctioned by the Judiciary ... [resulting] in perversion of long-standing law and creat[ing] an unfair playing field that favors the mortgage banking and servicing industry to the prejudice of homeowners throughout New York." (Joerger, 83 Misc 3d 605 at hn 2; quoting, Senate Introducer's Mem in Support, Bill Jacket L 2022, ch. 821, Sanders, revised 5-4-22]) The purported purpose of FAPA was to "restore longstanding law that made it clear that a lenders' discontinuance of a foreclosure action that accelerate [sic] a mortgage loan does not serve to reset the statute of limitations. " (Joerger, 83 Misc 3d 605 at hn 2; quoting, Assembly Introducer's Mem in Support, Bill Jacket L 2022, ch 832, Weinstein)
The Speller Court soundly rejected the purported purpose for FAPA, noting that "the legislature's unprecedented attack upon the judiciary, with its assault upon the Court of Appeals holding in Engel, ignores the long line of cases which stood for the judicial standard that historically existed in this area of law — that is, where there is a validly filed stipulation of discontinuance resolving a case, it is as if the case 'had never been begun'" (citation omitted).
Among the issues ignored by the Legislature in formulating its "response to [Engel]" was the fact that the Engel plaintiff did not act unilaterally in discontinuing the 2008 action. Rather, it acted by Stipulation, so-ordered by a court of competent jurisdiction. There can be no better example of an action taken bi-laterally, with the imprimatur of a Court. 
Moreover, while the Legislature's stated purpose was the protection of homeowners, no homeowner was prejudiced in Engel. The instant loan is not and was never a home loan. Engel, and Zlotchev as successor, are investors. The home was never occupied by an owner over the life of this loan. The result the Legislature intended is certainly not accomplished by the application of FAPA to these facts.
Clearly, the provisions of CPLR 203(h), and the concerns allegedly addressed by FAPA, do not apply to the plaintiff in this matter.
CPLR 3217(e), another applicable FAPA section, provides that, even a stipulation between the parties shall not reset the statute of limitations.
FAPA further amended General Obligations Law §17-105 to provide, in relevant part, that:
4. An acknowledgment, waiver, promise or agreement, express or implied in fact or in law, shall not, in form or effect, postpone, cancel, rest, toll, revive or otherwise extend the time limited for commencement of an action to foreclose a mortgage for any greater time or in any other manner than that provided in this section.
Subsection 5 continued the prohibition against resetting the statute, regardless of a stipulation made in an action or proceeding, or even a payment or partial payment.
Taken together, these statutes destroy the contractual rights of lenders to revoke an acceleration of mortgage debt. 
Perhaps, more importantly, the Legislature implied a 60-year pattern of the Judiciary's failure to understand that GOL §17-105 "always precluded the 'cancelling' or 'resetting' of the statute ... by a lender's unilateral act of revocation" (Speller, 80 Misc 3d at hn 13).
Speller further noted the Legislature's "comparison" of the accrual of the statute of limitations for a personal injury action (which cannot be unilaterally reset or extended by "un-injuring" and "re-injuring" the plaintiff) to a foreclosure action (New York State Senate [*7]Introducer's Memorandum in Support, S5473D). The Court stated:
The flaw in the Senate Sponsor's reasoning is evident from his misguided analogy between a personal injury plaintiff and a lender exercising its option to accelerate the maturity of the mortgage debt. Quite obviously, a person who has in fact sustained physical injury cannot "un-injure" himself or declare himself to be uninjured. However, when a borrower fails to make a monthly payment on a mortgage, the only injury the lender sustains (in the absence of an automatic acceleration provision) is the loss of one month's principal and interest on the debt. (As to that injury, of course, the lender cannot declare itself "uninjured" to prevent the six-year statute of limitations period from running on a claim to recover that monthly payment.) However, where a mortgage contains only a discretionary acceleration provision, the lender upon the borrower's failure to make a monthly payment has sustained no injury with respect to the balance of the mortgage debt; and thus, a discretionary acceleration and de-acceleration of the entire mortgage debt is purely a matter of election of remedies. (See, Christiana Trust v. Barua, 184 AD3d at 160) (emphasis supplied) The Senate Sponsor's statement that "once an injury has been sustained, economic or otherwise—parties have no unilateral right or ability to declare themselves 'unharmed and then re-harmed' is correct so far as it goes, but is simply inapplicable here because the Wlender sustained no injury with respect to the future balance due on the mortgage in the first place (Id. at hn 14) (emphasis added).
Speller went on to hold that:
The impact of the FAPA amendments in the circumstances of the present case is as follows: The Repayment Plan agreement coupled with [lender's] discontinuance of the 2009 foreclosure action unquestionably effected a valid revocation of the prior acceleration of the mortgage debt under pre-FAPA law. Moreover, insofar as [the Repayment Plan] reflects a bilateral agreement of both parties, and not just unilateral action by [the lender], to revoke the acceleration and restore the parties to their pre-acceleration rights and obligations, it passes muster even under CPLR 3217(e) and 203(h) as amended by FAPA. (id. at hn 15)
In 2013, prior to the Second Department's reversal of this Court's decision in Engel, the status of the law in New York was to recognize the lender's right to revoke an acceleration in accordance with its discretionary contractual right. The Legislature's misapprehension of that status, as expressed in FAPA, cannot be fairly effectuated to prejudice a lender's reasonable expectations and reliance interests under the law at the time the contracts were made. (id. at hn 19)
The facts in the matter currently before this Court mandate a similar conclusion. The 2013 Stipulation represented bilateral action by parties represented by counsel. The effect of the vacatur of a Judgment of Foreclosure and Sale, the cancellation of the Notice of Pendency, as well as the discontinuance of the action, all evidence the intent of the parties to restore themselves to their pre-acceleration status. 

The Purported Purpose of FAPA Renders Inappropriate 
 the Retroactive Application of FAPA to [*8]the Facts of 
 Engel
As the Speller Court held, "For centuries our law has harbored a singular distrust of retroactive statutes" (id. at hn 15, quoting, Eastern Enterprises v. Apfel, 524 US 498, 547 [1998]). "It is a fundamental canon of statutory construction that retroactive operation is not favored by the Courts and statutes will not be given such construction unless the language expressly or by necessary implication requires it" (id., quoting, Majewski v. Broadalbin-Perth Central School Dist., 91 NY2d 577, 584 [1998]).
In determining whether legislation has retroactive effect, "the court must ask whether the new provision attaches new legal consequences to events completed before its enactment." (id,., quoting, American Economy Ins. Co. v. State of New York, 30 NY3d 136, 147 [2017])
In Matter of Regina Metro Co., LLC v. New York State Div. Of Hous. & Community Renewal, 35 NY3d 332, 370 [2020], the Court of Appeals adopted a framework for analyzing retroactivity outlined by the United States Supreme Court in Landgraf v. USI Film Products, 511 US 244 [1994]) The Court of Appeals recognized that "application of a new statute to conduct that has already occurred may, but does not necessarily, have 'retroactive' effect upsetting reliance interests and triggering fundamental concerns about fairness" (35 NY3d at 365). A statute has retroactive effect if "it would impair rights a party possessed when he acted, increase a party's liability for past conduct, or impose new duties with respect to transactions already completed", thus impacting substantive rights. (Id.) On the other hand, a statute affecting only "the propriety of prospective relief" or nonsubstantive provisions governing procedure for adjudication of claims going forward "has no potentially problematic retroactive effect even when the liability arises from past conduct" (id.; internal citations omitted).
"Where legislation, if applied to past conduct, would impact substantive rights and have retroactive effect, the presumption against retroactivity is triggered" (id. at 370).
In this matter, it is clear that the retroactive effect of FAPA, in rendering ineffective the plaintiff's 2013 discontinuance of a prior foreclosure action, long after the fact, "plainly has retroactive effect impairing contractual rights, upsetting reliance interests and triggering fundamental concerns about fairness" (Speller, 80 Misc 3d 1233(A) at hn 16). The circumstances at bar, like those in Speller, give rise to a presumption against retroactivity based on the right of individuals to know what the law is and to conform their conduct accordingly. (See, Regina) 
"The question, then, becomes whether the Legislature expressed a clear intent to apply the legislation retroactively, i.e, an expression thereof sufficient to show that it contemplated the retroactive impact on substantive rights and intended that extraordinary result" (id.).
This Court does not dispute that the Legislature intended that FAPA remediate what it regarded as "abusive litigation tactics by lenders," particularly in manipulating statutes of limitation to their advantage and to the detriment of homeowners. (See, Senate Introducer's Memorandum in Support, S5473D; Assembly Memorandum in Support of Legislation, A7737B). Nor is it disputed that "remedial legislation should be given retroactive effect in order to effectuate its beneficial purpose" (Matter of Gleason, 96 NY2d 117, 122 [2001]).
Factors in analyzing retroactivity include:
• whether the Legislature has made a specific pronouncement about retroactive effect or conveyed a sense of urgency;
• whether the statute was designed to rewrite an unintended judicial interpretation;
• whether the enactment itself reaffirms a legislative judgment about what the law should be. (Id.)
While FAPA was silent on the issue of retroactivity, that it was enacted to "take effect immediately" conveys a sense of urgency in effectuating its remedial purposes. However, there is nothing in the Legislation or the sponsoring memoranda to suggest "that the Legislature contemplated the statute's retroactive impact on lenders' substantive rights and intended the extraordinary impairment of those rights that retroactivity would impose" (Speller, 80 Misc 3d 1223(A) at hn 17).
As in Speller, retroactive application of FAPA in the Engel case before this Court would not meaningfully advance its remedial purpose. The Sponsors' Memoranda are replete with references to inhibiting unilateral action by lenders to manipulate the statute of limitations. But nothing in this matter was done unilaterally. Plaintiff and Engel mutually agreed to discontinue the pending foreclosure action and reinstate the rights of both parties under the mortgage (See, id.).
This Court, like the Speller Court, can only conclude that the "take effect immediately" provision of FAPA §10 is insufficient to overcome the presumption against retroactive enforcement so as to destroy rights already accrued under pre-existing law. Nothing in the facts of Engel suggests any unilateral abuse of process; nor is any homeowner's security interest protected.
Applying FAPA in this matter is actually contrary to the statute's purported purpose of protecting mortgagors. This was not a home loan; it was never owner-occupied. Nor was there a unilateral de-acceleration. 
This Court finds that FAPA does not apply to this case.

 Retroactive Application of FAPA in this matter violates the Contracts Clause
"Assuming arguendo that FAPA was intended to be retroactively enforced despite manifest harm to lenders' substantive rights" (Id.), the inescapable conclusion is that FAPA, as applied to the facts at bar, impermissibly impairs the obligation of the contracting parties under the mortgage. 
For more than 200 years, our courts have lived by the principle that "contracts should be inviolable." (Sturges v. Crowninshield, 17 US 122 [1819]) While that principle has evolved to consider the protective power of the state, the Contracts Clause still involves a balancing test (Melendez v. City of New York, 16 F. 4th 992, 1016 [2d Cir. 2021]; Sveen v. Melin, 584 US 811 [2018]).
In Sveen, the U.S. Supreme Court reiterated a two-step test, with the threshold issue being whether the state law has "operated as a substantial impairment of a contractual relationship" (584 US at 819). The court first considers the extent to which the law undermines the contractual bargain, interferes with a party's reasonable expectations and prevents the party from safeguarding or reinstating his rights" (Id.). If there is a substantial impairment, the court moves to the second test: whether the state law is drawn in an "appropriate and reasonable" way to advance "a significant and legitimate public purpose" (id.; internal citations omitted). 
In this matter, retroactive application of FAPA does not simply impair, but wholly [*9]destroys, the lender's rights, as they have existed in New York for more than a century. "[B]y working a sea change in the law regarding a lender's right to revoke a prior acceleration of mortgage debt and the effect of such revocation upon the operation of the statute of limitations, FAPA would plainly undermine the parties' contractual bargain, interfere with their reasonable expectations under the law at the time the contracts were made, and wholly destroy the lender's rights under the Mortgage. That would unquestionably constitute a severe impairment of the contractual relationship" (Joerger, 83 Misc 3d 605 at hn 19).
In considering the second step of the Sveen test, i.e., whether FAPA is drawn in an appropriate and reasonable way to advance a significant and legitimate public purpose, the Court has historically acknowledged that "the absolute language of the [Contracts] Clause must leave room for 'the essential attributes of sovereign power' necessarily reserved by the States to safeguard the welfare of its citizens." However, the Court went on to note, "that power has limits when its exercise effects substantial modifications of private contracts." (Allied Structural Steel v. Spannaus, 438 US 234, 244 [1978]). 
Assuming, arguendo, first, that abusive tactics of mortgage lenders justifies the exercise of the State's police power to protect the community; and, second, that FAPA protects society in the due application of a statute of limitations, "the Contracts Clause nevertheless forbids the State from pursuing its ends by adopting as its policy ' the repudiation of debts or the destruction of contracts or the denial of means to enforce them'." (See, Speller, 80 Misc 3d 1223(A) at hn 20, citing, Home Building & Loan Assoc. v. Blaisdell, 290 US 398, 439 [1934]).
In Blaisdell, the Supreme Court considered the effect of a state mortgage enforcement moratorium imposed during the Great Depression. It identified relevant factors such as emergency circumstances then existing; the protection of a basic interest of society; and the fact that the legislation was "not for the mere advantage of particular individuals." In addition, the relief afforded by the challenged statute was "appropriate to the emergency" and "temporary in operation" (290 US 398, 439).
None of those factors is present in the retroactive application of FAPA to the instant matter. There is no pandemic-associated emergency: this mortgage has been in default for more than 16 years. No individual's basic societal interest (i.e., in protecting one's home) is impacted by this investor-owned property.
FAPA, in issuing a blanket prohibition without means of review or appeal, is neither appropriate to the circumstances nor temporary in operation. There is no provision for reconsideration, or any case-by-case analysis (Cf., W.B. Worthen Co. v. Kavanagh, 295 US 56 [1935]).
In short, the Court "looks to the laws in force at the making of contract to determine the obligation thereof. ... Not even changes of remedy may be pressed so far as to cut down the security of a mortgage without moderation or reason in a spirit of oppression. Even when the public welfare is invoked as an excuse, these bounds must be respected" (Id. at 60).
Assuming the Legislature acted with the best of intentions, the overarching effect of FAPA to this matter is precisely the result which the United States Supreme Court has proscribed. 
To retroactively enforce FAPA in this matter would utterly destroy the security of a [*10]mortgage which indisputably was effective at the time made, and at the time the initial revocation was made. The Contracts Clause does not permit such a result.
The deceleration of the subject loan was a lawful and bilateral exercise of the parties' contractual rights. 
Having so found, the Court need not thoroughly analyze plaintiff's arguments regarding Takings. The Court notes, however, that defendant does not contest that New York recognizes a right of action as property, or a right to property (In re Estate of Walton, 20 AD2d 386, 390 [1st Dept 1964). That plaintiff had a valid cause of action for foreclosure in 2015 cannot be seriously disputed. To permit FAPA to abrogate that property right calls into question the constitutionality of such a taking.
The holding here is limited to the application of FAPA to the facts of this case alone.[FN2]
This Court need not, and does not, make a blanket finding regarding the constitutionality of FAPA. However, on the basis of the foregoing, plaintiff's application to declare unconstitutional the retroactive application of FAPA to the facts of this matter is granted.

Plaintiff has established its prima facie case for enforcement
In moving for summary judgment on an action to foreclose a mortgage, a plaintiff establishes its case through the production of the mortgage, the unpaid note and evidence of default (CitiMortgage v. McKenzie, 161 AD3d 1040, 1040 [2d Dept 2018]). Where the issue of standing is raised by a defendant, a plaintiff must prove its standing by demonstrating that it is either the holder or assignee of the underlying note at the time the action is commenced (Bank of New York Mellon v. Gordon, 171 AD3d 197 [2d Dept 2019]). Plaintiff has established its standing by submission of the Bielby affidavit and its associated exhibits (NYSCEF 200-217). 
Bielby has been employed by plaintiff since July 2021. Prior to that time, she was employed by LoanCare, the servicer of the subject loan from 2006 until 2016. Appended to her affidavit are the sub-servicing agreements, limited powers of attorney and other documents confirming the relationship between plaintiff and LoanCare. (NYSCEF 201) As an employee of LoanCare, Bielby personally participated in servicing the subject loan. She had training and experience in the practices and procedures of servicing the loan and the creation of LoanCare's business records. Those records were kept and maintained in the ordinary course of business, and were made at or near the time of the occurrence of the recorded matters by persons with personal knowledge. Bielby avers that plaintiff incorporated LoanCare's records into its own business records, which she has personally reviewed. The mortgage was assigned by its originator to plaintiff by assignment dated September 11, 2009 (NYSCEF 206). The consolidated note was endorsed in blank by the originator (NYSCEF 205). Bielby avers the circumstances, dates and times of the default of former defendant Engel. Her affidavit goes on to explain the mailing processes and compliance with the requirements of the note regarding Notice [*11]of Default and the requirements of the RPAPL with respect to the mailing of the requisite notices and maintenance of proof of mailings.
Finally, Bielby avers that the consolidated note was sent to plaintiff's former counsel on or about July 24, 2013, and appends LoanCare's Mailing Log (NYSCEF 208) as evidence of the transmission of the file. (See NYSCEF 213) She avers that plaintiff had possession of the consolidated note at the commencement of the action. 
Possession is further confirmed by the appended affidavit of William Roth, Esq. (NYSCEF 214), managing member of plaintiff's former attorneys. Roth avers that on July 31, 2013, prior to the filing of the complaint, his firm received the original consolidated note endorsed in blank. (NYSCEF 216) He appends his firm's Note Inventory (NYSCEF 215) as additional evidence of possession. 
Through the submission of such evidence, plaintiff has established prima facie that it had standing to prosecute this action. Defendant failed to raise a triable issue of fact with respect to the issue of standing. (Gordon, 171 AD3d at 203) 
A plaintiff can establish a default on the loan by submitting an affidavit from an affiant with authority that lays the proper foundation for the admission of business records that prove the default (Wilmington Savings Fund Society, F.S.B. v. McLaughlin, 196 AD3d 729 [2d Dept 2021]). The Second Department has made it clear that the affidavit of the lender must also include the substantiating business records, in order to prove the default. Plaintiff has duly submitted its business records (NYSCEF 207), authenticated by the affidavit of Bielby. 
On such basis, plaintiff has established its entitlement to judgment as a matter of law.

Zlotchev is not entitled to cancellation of the mortgage or notice of pendency
Having determined that the foreclosure action is not time-barred, defendant's claim to relief on that ground is denied. Moreover, plaintiff asserts that former defendant Engel and Zlotchev are sufficiently united in interest for the provisions of CPLR 205, i.e., "relation back" to apply. Zlotchev's bare denial of that relationship has not been supported by any evidence that any consideration was paid at the time it took title, or even identification of the principals of the LLC. For purposes of this motion, Zlotchev was timely served.
Defendant's claim that it is somehow insulated from the effects of the reversal of the Second Department's dismissal is unavailing. Relying on DaSilva v. Musso, 76 NY2d 436 [1990], defendant contends that the Second Department's dismissal of the complaint represented a "valid and conclusive adjudication of the parties' substantive rights, unless and until it is overturned on appeal." Such rights are fully enforceable in the absence of a judicially-issued stay pending disposition of an appeal (76 NY2d at 440). It is undisputed that no stay was in effect at the time of Engel's transfer to Zlotchev. 
Defendant further argues that as a good-faith purchaser for value, the mortgage is extinguished upon the transfer. Defendant is incorrect. "The status of good faith purchaser for value cannot be maintained by a purchaser with either notice or knowledge of a prior interest or equity in the property, or one with knowledge f facts that would lead a reasonably prudent purchaser to make inquiries concerning such" (Gregg v. M&T Bank Corp., 160 AD3d 936, 940 [2d Dept 2018], citing, Yen-Te Hseuh Chen v. Geranium Dev. Corp., 243 AD2d 708, 709 [2d Dept 1997]). "The recording of a transaction involving real property provides potential subsequent purchasers ... with notice of previous encumbrances that might affect their interests. [*12]If the [purchaser] fails to use due diligence in examining the title, he or she is chargeable, as a matter of law, with notice of the facts which a proper inquiry would have disclosed." (Id., internal citations omitted)
The Second Department recently considered circumstances similar to those at bar in 436 Franklin Realty, LLC v. U.S. Bank, N.A., 188 AD3d 960 [2020]) In Franklin Realty, a foreclosure action commenced by a lender was dismissed by the Supreme Court as abandoned. A subsequent order denied the lender's motion to restore the action. Thereafter, the borrower conveyed the premises to the plaintiff, who commenced the action to cancel and discharge the mortgage. The Supreme Court subsequently vacated its prior order of dismissal and restored the foreclosure action to the active calendar. The Court specifically found that the purchaser was on notice of the recorded mortgage. The defendant lender's application for summary judgment was granted by the Supreme Court.
The Appellate Division affirmed, finding: "The lien of a mortgage is extinguished upon the sale of the real property affected thereby unless the purchaser has knowledge, either actual or constructive, of the existence of the mortgage" (188 AD3d at 961).
In 436 Franklin, the mortgage was recorded prior to the recording of the deed transferring the premises to the plaintiff. Since the mortgage was recorded earlier than the deed, the Court found that the buyer had constructive notice of the mortgage when it purchased the premises and was therefore "chargeable with the duty to make further inquiry to determine whether the lien had been satisfied or released" (Id. at 962, citing, Fairmont Funding v. Stefansky, 301 AD2d at 564). Further inquiry would have revealed that the mortgage had not been satisfied or released and the foreclosure action was not finally concluded as the foreclosure plaintiff had been given leave to renew its application to restore.
A similar result is mandated in this matter. There is no dispute that the mortgage was recorded prior to Zlotchev's acquisition of the property, placing Zlotchev on constructive notice to inquire to determine whether the mortgage had been satisfied or released. Such inquiry would have revealed not only that plaintiff had received leave to appeal to the Court of Appeals, but that argument was scheduled for barely two weeks after the closing.
On such basis, defendant cannot maintain the status of a good faith purchaser for value. Nor has defendant raised any issue of fact which bears on this issue. Its motion is denied, and its counterclaim is therefore dismissed.

 Conclusion
On the basis of the foregoing, it is ORDERED that:
1. Having found that the retroactive application of FAPA to the facts of this case is unconstitutional, plaintiff's application for summary judgment is granted.
2. Plaintiff's application for summary judgment on its foreclosure claim is granted. Defendant Zlotchev's answer and counterclaim are dismissed.
3. Defendant's cross motion is denied.
An Order of Reference will issue under separate cover.
The foregoing constitutes the decision and order of the Court.
Dated: August 22, 2024
Goshen, New York
ENTER:
HON. SANDRA B. SCIORTINO, J.S.C.

Footnotes

Footnote 1:The mortgage at bar provided Lender with a discretionary right to require immediate payment of the entire amount then remaining outstanding under certain circumstances not in dispute herein. (NYSCEF 202 at 16) 

Footnote 2:Defendant cites several cases which in which it argues that the Second Department has upheld the constitutionality of FAPA. However, a review of those cases, not cited here, shows that they neither involve retroactive application nor raise constitutional issues. In those matters which did raise constitutional questions, the Second Department has remitted the matters, as it did here, to the trial courts. ,